## MEDUSA CONCRETE WATERPROOFING CO. v. CERESIT WATERPROOFING CO. et al.

(District Court, N. D. Illinois, E. D.   June 28, 1920.)

No. 483.

1. Patents ⊛⟶36—Laboratory tests cannot overcome practical use of product.
  Evidence of laboratory tests, showing that the patented process and product did not effect the desired result, or testimony of experts to that effect, cannot outweigh the test of practical use.

2. Patents ⊛⟶328— 851,247, for waterproofing Portland cement, held valid and infringed.
  The Newberry patent, No. 851,247, for waterproofing Portland cement by mixing therewith an insoluble salt of a fatty acid and no glycerine or other like water-attractile substance, held valid in the light of its practical use, and infringed by a process using a similar substance in a paste form, whereas in the patented process it was generally used in a powdered form, though it originally was a paste and could be made so again.

⊛⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity.   Suit for the infringement of a patent by the Medusa Concrete Waterproofing Company against the Ceresit Waterproofing Company and others.   Decree rendered for plaintiff.

Parker & Carter, of Chicago, Ill., for plaintiff.

Rector, Hibben, Davis & Macauley and Jones, Addington, Ames & Seibold, all of Chicago, Ill., for defendants.

CARPENTER, District Judge.   This suit involves Newberry patent, No. 851,247, granted April 23, 1907, for waterproofing Portland cement, and process for making the same.   That patent was the disturbative feature in McCormick Waterproofing Portland Cement Co. et al. v. Medusa Concrete Waterproofing Co., 222 Fed. 288, 138 C. C. A. 14, where the Court of Appeals for the Seventh Circuit sustained a decree of the trial court holding it to be valid and infringed.   In that case the court found that for 40 years those skilled in the art had been aiming to overcome the attraction which concrete had for water. The capillarity of cement construction had been well known, and until Newberry came into the field, nobody had offered anything like a practical solution of the difficulty.   As the Court of Appeals said:

"This solution of the problem was not a haphazard achievement."

The instant case introduces, to be sure, another defendant, not bound primarily by the result in the McCormick Case.   It has been very ably argued, and a serious attempt made to show that the record is new and demands a different decision.   I have examined with great care the record in the McCormick Case.   In the present case the new features may be noted as:   (a) A different expert;   (b) two or three additional citations from the old art;   (c) laboratory tests, from which the makers determined that the Newberry process had no practical value.

The new expert, Dr. Gudeman, told a variant of the old story in the McCormick Case, offering no convincing basis for denying the validity of the patent.   The torches in the procession of the prior art, as shown in the former case, were dim, and no new light has been shed from the citations, 30 or 40 years old, relied upon by the defendants in this case.

[1, 2]   Laboratory tests cannot turn the balance in the scale against practical use.   The testimony of experts that a device will not work is of no value, if it does work.   In the light of the practical use of plaintiff's process, and its increasing growth, I must assume that Newberry discovered something worth while.

Most of the defendants' argument is based upon a reanalysis of the Sylvester process, which was quite disposed of by the Court of Appeals in the McCormick Case.   The patent will be held valid.

As to infringement:   Plaintiff's patent tells us to use an insoluble salt of a fatty acid and no glycerine or other like water-attractile substance, and it is mixed in small percentage with the cement.   The defendant claims that, because his product is in a paste, it does not come within the claims of the plaintiff's patent.   Newberry recommends the drying of the product, although in the process of manu-

facture it is first in the wet or pasty shape of the defendants' product. The Newberry patent says:

"The resultant stearate of lime is to be dried, so that it is in the form of a dry powder."

Newberry testified that the Medusa product was made and sold both in the paste and the powdered form, but—

"that the demand for it in the powdered form greatly exceeds the demand for it in the paste form, because it is more convenient to mix with the cement and other materials when in the form of powder."

The expert Miner testified that the Newberry compound can easily be converted into a paste, the condition in which it was previous to the drying out, as recommended in the patent. As the record shows:

"The only difference between the plaintiff's and defendants' product is the manner of mixing the compound with the cement on the job; the Medusa powder being mixed with the dry material and the water added to that mixture, whereas the Ceresit is mixed with the water and in that form added to the dry material."

The defendants' product is mixed integrally with the concrete; it is an insoluble lime salt of a fatty acid or water-repellant material; it is used in minute quantities, and is free from glycerine and other like water-attractile substances; it is used for the same purpose, and operates in exactly the same way. The infringement is clear.

A decree may be prepared, finding the patent valid and infringed, and the usual reference to the master for an accounting.